**IN THE CIRCUIT COURT OF GARLAND COUNTY, ARKANSAS**
_____IV_____ **DIVISION**

**FILED**

**TYRONE DAVIS, INDIVIDUALLY, AND AS**
**PARENT AND NATURAL GUARIDAN OF JALISSA DAVIS;**
**ELNORA DAVIS, INDIVIDUALLY AND AS PARENT AND**
**NATURUAL GUARDIAN OF ALZERIA DAVIS; and**
**JUMILYAH MITCHELL**

2017 FEB 9 PM 2 31

JEANNE PIKE
GARLAND CO. CIRCUIT CLERK
**PLAINTIFFS**
BY_____

**V.**              CASE NO. _CV-17-142-IV_

**STATE FARM FIRE AND CASUALTY COMPANY**              **DEFENDANT**

**COMPLAINT**
**and**
**PETITION FOR DECLARATORY JUDGMENT**

COMES NOW, Plaintiffs, Tyrone Davis, individually and as Parent and Natural
Guardian of Jalissa Davis, a minor; Elnora Davis, individually and as Parent and Natural
Guardian of Alzeria Davis, a minor; and Jumilyah Mitchell, by and through their undersigned
counsel, Cook Law Firm, P.A., and for their cause of action against Defendant, State Farm Fire
and Casualty Company, respectfully state as follows:

**I. STATEMENT OF JURISDICTION**

1.       This complaint is brought pursuant to Rule 57 of the Arkansas Rules of Civil
Procedure, and A.C.A. § 16-13-201, and § 16-111-102, et seq., Uniform Declaratory Judgment
Act, to determine the rights and status of the parties, with a request the Court advance this matter
on the trial docket.

2.       This claim is also brought pursuant to the Court's jurisdiction over breach of
contract, such jurisdiction granted A.C.A. § 16-13-201.

Plaintiffs' Original Complaint & Petition for Declaratory Judgment
_Davis v. State Farm_
Page 1 of 10

**EXHIBIT A**

3.    Plaintiffs have suffered losses and damages within the minimum jurisdictional amount of this Court.

4.    To the extent Plaintiffs shall later amend this Complaint to include negligence; this claim is brought pursuant to this Court's jurisdiction over personal injury claims predicated on negligence, such jurisdiction granted by A.C.A. § 16-13-201.

5.    Venue is proper under A.C.A. § 16-60-112 in that the incident herein complained of occurred in Garland County, Arkansas.

## II. PARTIES TO THE CLAIM

6.    Plaintiffs, at all times pertinent hereto, were residents of Hot Springs, Garland, Arkansas.

7.    At the time of the incident described further herein, Defendant State Farm Fire and Casualty Company (hereinafter "State Farm") was an insurance company authorized to issue policies of motor vehicle liability insurance in the State of Arkansas and its principal place of business in the State is located in Little Rock, Arkansas and may be served with process via registered agent at:

> State Farm Fire and Casualty Company
> via Registered Agent – Corporation Service Company
> 300 Spring Building, Suite 900
> 300 South Spring Street
> Little Rock, AR 72201

8.    Defendant State Farm Fire and Casualty Company, at all times relevant to this cause of action, was represented by unknown agents, servants, and employees acting within the course and scope of their employment, and Plaintiffs invoke the doctrine of *respondeat superior*.

## III. STATEMENT OF THE CASE

9.      On or about January 19, 2016 at approximately 6:00 p.m., Plaintiff Tyrone Davis,

a lap-and seat-belted driver operating a 2001 Ford Taurus, was traveling eastbound on South

Avenue in the City of Hot Springs, Arkansas. Plaintiffs Elnora Davis, Alzeria Davis, Jalissa

Davis, and Jumilyah Mitchell were all lap-and seat-belted passengers in Tyrone Davis's vehicle.

At said time and place, John Giedd was operating a 2001 Chevy Pickup southbound on Fourth

Street. John Giedd's vehicle failed to yield to Plaintiffs' vehicle and violently struck Plaintiffs'

vehicle on the driver side. As a direct result of John Giedd's carelessness and negligent conduct

in failing to yield, failing to maintain proper control, and failing to keep a proper lookout,

Plaintiffs suffered serious injuries their persons. However, John Giedd did not have enough

liability insurance coverage on his vehicle; therefore, Plaintiff Tyrone Davis notified his

insurance company, State Farm.

10.     As a further result of all the above, Plaintiffs incurred expenses for medical care

and attention. These expenses were for the necessary care and treatment of the injuries resulting

from the incident complained of herein. These charges are reasonable and were the usual and

customary charges for such services.

11.     As a proximate result of the negligence and recklessness of John Giedd, who had

the minimum limits of liability insurance coverage, Plaintiff Tyrone Davis sustained injuries

including but not limited to:  trauma induced pain from his shoulders down; back pain; neck pain;

tenderness of the lumbar spine; pain upon palpation of the lower c-spine; pain with percussion over

the lumbar spine; chest and sternum pain; his right knee struck the dashboard; his right shoulder

struck the steering wheel; constant neck pain; pain upon movement; constant sharp headaches;

constant mid back pain; cramping and burning sensations of the mid back; constant lower back

pain; constant numbness down the right leg; difficulty walking; restricted movements; decreased thoracic kyphosis; severe tenderness of the occipital, cervical, thoracic, and lumbar regions; there were active trigger points in the cervical and trapezius regions; there were hypomobile joints in the lumbar and cervical region; tenderness of the trapezius and deltoids; sharp pain upon movement of the cervical and lumbosacral regions; reversal of cervical lordosis; there were subluxations at C2, C5, L2, L5, and R SI PI; there was a break in Georges line at C5-6 and L5-S1; there was ligamentous instability in extension at C2, C4, and in flexion at C4 and C5; decreased lumbar lordosis; cervical strain; thoracic strain; panniculitis of the thoracic region; lumbar strain; lumbago with sciatica; lumbar sprain; low back pain; and panniculitis of the thoracolumbar region.

12.     As a proximate result of the negligence and recklessness of John Giedd, who had the minimum limits of liability insurance coverage, Plaintiff Jalissa Davis suffered trauma induced knee abrasion and contusion.

13.     As a proximate result of the negligence and recklessness of John Giedd, who had the minimum limits of liability insurance coverage, Plaintiff Elnora Davis suffered trauma induced neck pain; lower back pain; head trauma; radiating pain; left lower extremity pain; joint pain; pain in her left knee and left ankle; abrasion of her left ankle; tenderness of her lower back; muscle strain; constant neck pain; pain upon movement; constant sharp headaches; constant mid back pain; cramping and burning sensations of the mid back; constant lower back pain; constant numbness down her right leg; difficulty walking; restricted movements; decreased thoracic kyphosis; severe tenderness of the occipital, cervical, thoracic, and lumbar regions; there were active trigger points in the cervical and trapezius regions; there were hypomobile joints in the lumbar and cervical region; tenderness of the trapezius and deltoids; sharp pain upon movement of the cervical and lumbosacral regions; reversal of cervical lordosis; there were subluxations at

C2, C5, L2, L5, and R SI PI; there was a break in Georges line at C5-6 and L5-S1; there was ligamentous instability in extension at C2, C4, and in flexion at C2, C4, and C5; decreased lumbar lordosis; muscle spasms; cervical strain; thoracic strain; panniculitis of the thoracic region; lumbar strain; lumbago with sciatica; lumbar sprain; low back pain; panniculitis of the thoracolumbar region; thoracic sprain; and meralgia paresthetica of her right lower limb.

14.    As a proximate result of the negligence and recklessness of John Giedd, who had the minimum limits of liability insurance coverage, Plaintiff Alzeria Davis suffered trauma induced coughing up blood and abrasion to her forehead.

15.    As a proximate result of the negligence and recklessness of John Giedd, who had the minimum limits of liability insurance coverage, Plaintiff Jumilyah Mitchell suffered trauma induced headaches; neck pain; tenderness to palpation of the upper C- Spine; numbness; jaw pain; laceration to tongue but the bleeding was controlled; head trauma due to hitting her head on the roof of the vehicle; swelling; decreased range of motion; chest/sternum pain; left hip pain; pelvic pain; left sided pain; there was left-sided tenderness of the cervical region; her shoulder hit the door; constant neck pain; pain upon movement; constant sharp headaches; constant mid back pain; cramping and burning sensations of the mid back; constant lower back pain; difficulty walking; restricted movements; decreased thoracic kyphosis; severe tenderness of the occipital, cervical, thoracic, and lumbar regions; there were active trigger points in the cervical and trapezius regions; there were hypomobile joints in the lumbar and cervical region; tenderness of the trapezius and deltoids; sharp pain upon movement of the cervical and lumbosacral regions; reversal of cervical lordosis; there were subluxations at C2, C5, L2, L5, and R SI PI; there was a break in Georges line at C5-6 and L5-S1; there was ligamentous instability in extension at C2, C4, and in flexion at C2, C4, and C5; decreased lumbar lordosis; cervical strain; thoracic strain; panniculitis of the thoracic

region; lumbar strain; lumbago with sciatica; lumbar sprain; low back pain; post-traumatic headaches; and spinal stenosis of the lumbosacral region.

16.    On or about October 10, 2016, Plaintiffs settled the third party liability claim with John Giedd's insurance company. The settlements were as follows:

      a.    Tyrone Davis: $8,500.00 ($216.33 under medical bills);

      b.    Jalissa Davis: $2,500.00 ($117.12 under medical bills);

      c.    Elnora Davis: $20,500.00 ($2,570.79 under medical bills);

      d.    Alzeria Davis: $2,000.00 ($264.74 under medical bills);

      e.    Jumilyah Mitchell: $16,500.00 ($1,679.52 under medical bills)

17.    On or about September 22, 2016, Plaintiffs notified Defendant that of their underinsured motorists demands.

18.    On or about December 4, 2016, Defendant extended the following offers for Plaintiffs underinsured claims:

      a.    Tyrone Davis: $2,300.00;

      b.    Jalissa Davis: $400.00;

      c.    Elnora Davis: $3,200.00;

      d.    Alzeria Davis: $600.00;

      e.    Jumilyah Mitchell: $2,400.00

19.    On or about November 4, 2016, Plaintiffs extended the following counteroffers:

      a.    Tyrone Davis: $15,000.00;

      b.    Jalissa Davis: $6,000.00;

      c.    Elnora Davis: $8,000.00;

      d.    Alzeria Davis: $4,000.00;

     e.     Jumilyah Mitchell: $20,000.00

20.    On or about November 4, 2016, Defendant contacted Plaintiffs and extended the following new offers:

     a.     Tyrone Davis: $4,200.00;

     b.     Jalissa Davis: $1,000.00;

     c.     Elnora Davis: $5,000.00;

     d.     Alzeria Davis: $1,000.00;

     e.     Jumilyah Mitchell: $4,300.00

21.    On or about November 10, 2016, Defendant informed Plaintiff that the previous offers given on November 4, 2016 were final.

22.    Plaintiffs have made a written demand to Defendant State Farm regarding their claims for underinsured motorist benefits. Despite Plaintiffs' good faith efforts to resolve their claims through negotiations, Defendant State Farm has refused settlement.

## IV. DECLARATORY JUDGMENT

23.    Plaintiffs hereby adopt and reassert the aforementioned allegations as if fully set forth word for word. Further, Plaintiffs request that this Court make a determination of the obligations of Defendant State Farm.

24.    On January 19, 2016, a valid and enforceable policy of insurance existed between policy-holder Tyrone Davis and Defendant State Farm.

25.    Attached is a copy of Defendant State Farm's Arkansas Personal Automobile Insurance Policy. *See* Exhibit A.

26.    Defendant State Farm's Insurance Policy No. 2874418-D08-04, provided for the obligation for payment of Plaintiffs' underinsured bodily injury damage by stating: *"We will pay*

*damages for bodily injury an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle."* See Exhibit A– Section III – Uninsured Motor Vehicle – Coverage W.

27.    Defendant's conduct constituted an unreasonable denial of Plaintiffs' claims for benefits under the underinsured motorist bodily injury coverage by failing to timely honor and pay benefits in accordance with the terms and conditions of the contract.

## V. BREACH OF CONTRACT

28.    Plaintiffs hereby adopt and reassert the aforementioned allegations as if fully set forth word for word.

29.    At the time of the above-described collision, policy-holder Tyrone Davis had a valid contract of insurance with Defendant State Farm.

30.    Pursuant to Ark. R. Civ. P. 10(d), Plaintiffs attach a copy of Defendant State Farm's Insurance Policy No. 2874418-D08-04. *See* Exhibit A.

31.    The valid contract of insurance policy-holder Tyrone Davis purchased and maintained with State Farm included coverage for bodily injury and property damage incurred as a result of an underinsured motorist.

32.    Policy-holder Tyrone Davis had paid all premiums due under the policy of insurance with State Farm, and has performed all obligations under said policy of insurance.

33.    State Farm refuses to honor the terms of its policy of insurance with Tyrone Davis by not paying the documented expenses and costs that arose from the injuries and damages Plaintiffs sustained in the motor vehicle collision with John Giedd, an underinsured motorist.

34.    In refusing to honor the terms of its contract with Tyrone Davis, Defendant State Farm has breached the express terms of the contract.

35.     In refusing to honor the terms of its contract with Tyrone Davis, Defendant State Farm has breached the implied covenant of good faith and fair dealing.

36.     Plaintiffs affirmatively plead that all conditions precedent to the initiation of this suit for the recovery requested herein have occurred.

37.     Pursuant to Ark. R. Civ. P. 10(d), Plaintiffs will supplement and attach a certified copy of said contract for insurance with Defendant State Farm upon receipt from Defendant in discovery.

38.     Plaintiffs claim entitlement for the following damages, all of which are due to John Giedd's underinsurance, should have been covered under Tyrone Davis' underinsured motorist policy issued by Defendant:

         (a)     damages for emotional distress suffered by Plaintiffs after the injury and continuing through the present;

         (b)     damages for pain and suffering visited upon the Plaintiffs due to injuries;

         (c)     damages for future pain and suffering;

         (d)     compensatory damages for medical and other out of pocket expenses; and

         (e)     damages for medical expenses to be incurred in the future;

42.     Plaintiffs are entitled to statutory penalty damages of 12% of the amount of the loss, plus attorney fees pursuant to A.C.A § 23-79-208.

43.     Plaintiffs' total compensatory damages shall be proved by the evidence presented at trial and are in excess of any minimum jurisdictional requirements of this Court; and

44.     Plaintiffs respectfully demand a trial by jury.

WHEREFORE, Plaintiffs respectfully pray that the Court enter an order setting out the rights of the parties under the contract as requested herein and that she recovers from Defendant

the following: their actual damages, the additional damages available pursuant to statue or common law, exemplary damages, statutory penalties of 12% plus attorney fees, pre- and post-judgment interest (where applicable), attorney's fees, costs, and all other just and proper relief to which Plaintiff may be entitled, general and/or special, whether at law or in equity.

Respectfully submitted,

**COOK LAW FIRM, P.A.**
8114 Cantrell, Suite 100
Little Rock, AR 72227
Telephone:  (501) 255-1500
Facsimile:   (501) 255-1116

Harold F. Cook, AR Bar No. 99118
Whitney M. Cossio, AR Bar No. 2014155
*Attorneys for Plaintiffs*



PLEASE READ YOUR POLICY CAREFULLY. IF YOU HAVE AN ACCIDENT, CONTACT YOUR STATE FARM AGENT OR ONE OF OUR CLAIM OFFICES AT ONCE.  (SEE "REPORTING A CLAIM-INSURED'S DUTIES" IN THIS POLICY.)

Authorized Representative

 State Farm Fire and Casualty Company, Home Office, Bloomington, Illinois

Mid-South Office   •   22 State Farm Drive   •   Monroe, Louisiana 71208-0001



# YOUR
# STATE FARM

# CAR
# POLICY

Arkansas
Policy Form 9904.6

# STATE FARM FIRE AND CASUALTY COMPANY
## BLOOMINGTON, ILLINOIS
### A STOCK COMPANY

## DEFINED WORDS
## WHICH ARE USED IN SEVERAL PARTS OF THE POLICY

We define some words to shorten the policy. This makes it easier to read and understand. Defined words are printed in boldface italics. *You* can pick them out easily.

*Bodily Injury* – means bodily injury to a *person* and sickness, disease or death which results from it.

*Car* – means a land motor vehicle with four or more wheels, which is designed for use mainly on public roads. It does not include:

1. any vehicle while located for use as a dwelling or other premises; or

2. a truck-tractor designed to pull a trailer or semitrailer.

*Car Business* – means a business or job where the purpose is to sell, lease, repair, service, transport, store or park land motor vehicles or trailers.

*Insured* – means the *person, persons* or organization defined as *insureds* in the specific coverage. If the information *you* have provided State Farm is incorrect or incomplete, or changes during the policy period, State Farm may decrease or increase the premium during the policy period as set out in the provision titled **Premium** of the Conditions section of this policy.

*Loss* – defined in Sections IV and V.

*Newly Acquired Car* – means a *replacement car* or an *additional car*.

   *Replacement Car* – means a *car* purchased by or leased to *you* or *your spouse* to replace *your car*. This policy will only provide coverage for the *replacement car* if *you* or *your spouse*:

      1. tell us about it within 30 days after its delivery to *you* or *your spouse*; and

      2. pay us any added amount due.

   *Additional Car* – means an added *car* purchased by or leased to *you* or *your spouse*. This policy will only provide coverage for the *additional car* if:

1. it is a *private passenger car* and we insure all other *private passenger cars*; or

2. it is other than a *private passenger car* and we insure all *cars*

owned by or leased to *you* or *your spouse* on the date of its delivery to *you* or *your spouse*.

This policy provides coverage for the *additional car* only until the earlier of:

1. 12:01 A.M. Standard Time at the address shown on the declarations page on the 31st day after the delivery of the *car* to *you* or *your spouse*; or

2. the effective date and time of a policy issued by us or any other company that describes the *car* on its declarations page.

*You* or *your spouse* may apply for a policy that will provide coverage beyond the 30th day for the *additional car*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of application.

If a *newly acquired car* is not otherwise afforded comprehensive or collision coverage by this or any other policy, this policy will provide the comprehensive or collision coverage not otherwise provided for the *newly acquired car*. If such coverage is provided by this paragraph, it will apply only until 12:01 A.M. Standard Time at the address shown on the declarations page on the sixth day after the delivery of the *car* to *you* or *your spouse*. Any comprehensive or collision coverage provided by this paragraph is subject to a deductible of $500.

*Non-Owned Car* – means a *car* not owned by, registered to or leased to:

1. *you, your spouse*;

2. any *relative* unless at the time of the accident or *loss*:

3
9046

a. the *car* currently is or has within the last 30 days been insured for liability coverage; and

b. the driver is an *insured* who does not own or lease the *car;*

3. any other *person* residing in the same household as *you, your spouse* or any *relative;* or

4. an employer of *you, your spouse* or any *relative.*

*Non-owned car* does not include a:

1. rented *car* while it is used in connection with the *insured's* employment or business; or

2. *car* which has been operated or rented by or in the possession of an *insured* during any part of each of the last 21 of more consecutive days. If the *insured* is an *insured* under one or more other car policies issued by us, the 21 day limit is increased by an additional 21 days for each such additional policy.

A *non-owned car* must be a *car* in the lawful possession of the *person* operating it.

*Occupying* – means in, on, entering or alighting from.

*Person* – means a human being.

*Private Passenger Car* – means a *car:*

1. with four wheels;

2. of the private passenger or station wagon type; and

3. designed solely to carry *persons* and their luggage.

*Relative* – means a *person* related to *you* or *your spouse* by blood, marriage or adoption who resides primarily with *you.* It includes *your* unmarried and unemancipated child away at school.

*Spouse* – means *your* husband or wife who resides primarily with *you.*

*Temporary Substitute Car* – means a *car* not owned by or leased to *you* or *your spouse,* if it replaces *your car* for a short time. Its use has to be with the consent of the owner. *Your car* has to be out of use due to its breakdown, repair, servicing, damage or *loss.* A *temporary substitute car* is not considered a *non-owned car.*

*Utility Vehicle* – means a motor vehicle with:

1. a pickup, panel or van body; and

2. a Gross Vehicle Weight of 10,000 pounds or less.

*You* or *Your* – means the named insured or named insureds shown on the declarations page.

*Your Car* – means the *car* or the vehicle described on the declarations page.

## DECLARATIONS CONTINUED

We, the State Farm Fire and Casualty Company, agree to insure *you* according to the terms of this policy based:

1. on *your* payment of premium for the coverages *you* chose; and

2. in reliance on *your* statements in these declarations.

*You* agree, by acceptance of this policy that:

1. the statements in these declarations are *your* statements and are true; and

2. we insure *you* on the basis *your* statements are true; and

3. this policy contains all of the agreements between *you* and us or any of our agents.

Unless otherwise stated in the exceptions space on the declarations page, *your* statements are:

1. Ownership. *You* are the sole owner of *your car.*

2. Insurance and License History. Neither *you* nor any member of *your* household within the past three years has had:

a. vehicle insurance canceled by an insurer; or

b. a license to drive or vehicle registration suspended, revoked or refused.

3. Use. *Your car* is used for pleasure and business.

4
9046

# WHEN AND WHERE COVERAGE APPLIES

**When Coverage Applies**

The coverages *you* chose apply to accidents and *losses* that take place during the policy period.

The policy period is shown under "Policy Period" on the declarations page and is for successive periods of six months each for which *you* pay the renewal premium. Payments must be made on or before the end of the current policy period. The policy period begins and ends at 12:01 A.M. Standard Time at the address shown on the declarations page.

**Where Coverage Applies**

The coverages *you* chose apply:

1. in the United States of America, its territories and possessions or Canada; or

2. while the insured vehicle is being shipped between their ports.

The liability, medical payments and physical damage coverages also apply in Mexico within 50 miles of the United States border. A physical damage coverage *loss* in Mexico is determined on the basis of cost at the nearest United States point.

Death, dismemberment and loss of sight and total disability coverages apply anywhere in the world.

# FINANCED VEHICLES

If a creditor is shown in the declarations, we may pay any comprehensive or collision *loss* to:

1. *you* and, if unpaid, the repairer; or

2. *you* and such creditor, as its interest may appear, when we find it is not practical to repair *your car*; or

3. the creditor, as to its interest, if *your car* has been repossessed.

When we pay the creditor for *loss* for which *you* are not covered, we are entitled to the creditor's right of recovery against *you* to the extent of our payment. Our right of recovery shall not impair the creditor's right to recover the full amount of its claim.

The coverage for the creditor's interest only is valid until we terminate it. We will not terminate such coverage because of:

1. any act or negligence of the owner or borrower; or

2. a change in the ownership or interest unknown to us, unless the creditor knew of it and failed to tell us within 10 days; or

3. an error in the description of the vehicle.

The date of termination of the creditor's interest will be at least:

1. 10 days after the date we mail or electronically transmit the termination notice if the termination is because of nonpayment of premium; or

2. 20 days after the date we mail or electronically transmit the termination notice if the termination is for any other reason.

5
8046

## REPORTING A CLAIM — INSURED'S DUTIES

1. **Notice to Us of an Accident or Loss**

   The *insured* must give us or one of our agents written notice of the accident or *loss* as soon as reasonably possible. The notice must give us:

   a. *your* name; and

   b. the names and addresses of all *persons* involved; and

   c. the hour, date, place and facts of the accident or *loss*; and

   d. the names and addresses of witnesses.

2. **Notice to Us of Claim or Suit**

   If a claim or suit is made against an *insured*, that *insured* must at once send us every demand, notice or claim made and every summons or legal process received.

3. **Other Duties Under the Physical Damage Coverages**

   When there is a *loss, you* or the owner of the property also shall:

   a. make a prompt report to the police when the *loss* is the result of theft or larceny.

   b. protect the damaged vehicle. We will pay any reasonable expense incurred to do so.

   c. show us the damage, when we ask.

   d. provide all records, receipts and invoices, or certified copies of them. We may make copies.

   e. answer questions under oath when asked by anyone we name, as often as we reasonably ask, and sign copies of the answers.

4. **Other Duties Under Medical Payments, Uninsured Motor Vehicle, Underinsured Motor Vehicle, Death, Dismemberment and Loss of Sight and Total Disability Coverages**

   The *person* making claim also shall:

   a. give us all the details about the death, injury, treatment and other information we need to determine the amount payable.

   b. be examined by physicians chosen and paid by us as often as we reasonably may require. A copy of the report will be sent to the *person*

   upon written request. The *person*, or his or her legal representative if the *person* is dead or unable to act, shall authorize us to obtain all medical reports and records.

   c. answer questions under oath when asked by anyone we name, as often as we reasonably ask, and sign copies of the answers.

   d. under the uninsured motor vehicle and underinsured motor vehicle coverages:

      (1) let us see the insured *car* the *person* occupied in the accident.

      (2) send us at once a copy of all suit papers if the *person* sues the party liable for the accident for damages.

   e. under the uninsured motor vehicle coverage, report a "hit-and-run" accident to the police within 24 hours and to us within 30 days.

   f. under the death, dismemberment and loss of sight and total disability coverages, give us proof of claim on forms we furnish.

5. **Insured's Duty to Cooperate With Us**

   The *insured* shall cooperate with us and, when asked, assist us in:

   a. making settlements;

   b. securing and giving evidence;

   c. attending, and getting witnesses to attend hearings and trials.

   The *insured* shall not, except at his or her own cost, voluntarily:

   a. make any payment or assume any obligation to others; or

   b. incur any expense, other than for first aid to others.

6
8046

# SECTION I — LIABILITY — COVERAGE A

*You* have this coverage if "A" appears in the "Coverages" space on the declarations page.

We will:

1. pay damages which an *insured* becomes legally liable to pay because of:

   a. *bodily injury* to others, and

   b. damage to or destruction of property including loss of its use,

   caused by accident resulting from the ownership, maintenance or use of *your car*; and

2. defend any suit against an *insured* for such damages with attorneys hired and paid by us. We will not defend any suit after we have paid the applicable limit of our liability for the accident which is the basis of the lawsuit.

In addition to the limits of liability, we will pay for an *insured* any costs listed below resulting from such accident.

1. Court costs of any suit for damages that we defend.

2. Interest on damages owed by the *insured* due to a judgment and accruing:

   a. after the judgment, and until we pay, offer or deposit in court the amount due under this coverage; or

   b. before the judgment, where owed by law, and until we pay, offer or deposit in court the amount due under this coverage, but only on that part of the judgment we pay.

3. Premiums or costs of bonds:

   a. to secure the release of an *insured's* property attached under a court order.

   b. required to appeal a decision in a suit for damages if we have not paid our limit of liability that applies to the suit; and

   c. up to $250 for each bail bond needed because of an accident or related traffic law violation.

   We have no duty to furnish or apply for any bonds. The amount of any bond we pay for shall not be more than our limit of liability.

4. Expenses incurred by an *insured*:

   a. for loss of wages or salary up to $35 per day if we ask the *insured* to attend the trial of a civil suit.

   b. for first aid to others at the time of the accident.

   c. at our request.

We have the right to investigate, negotiate and settle any claim or suit.

## Coverage for the Use of Other Cars

The liability coverage extends to the use, by an *insured*, of a *newly acquired car*, a *temporary substitute car* or a *non-owned car*.

## Who Is an Insured

When we refer to *your car*, a *newly acquired car* or a *temporary substitute car*, *insured* means:

1. *you*;

2. *your spouse*;

3. the *relatives* of the first *person* named in the declarations;

4. any other *person* while using such a *car* if its use is within the scope of consent of *you* or *your spouse*; and

5. any other *person* or organization liable for the use of such a *car* by one of the above *insureds*.

When we refer to a *non-owned car*, *insured* means:

1. the first *person* named in the declarations;

2. his or her *spouse*;

3. their *relatives*; and

4. any *person* or organization which does not own or hire the *car* but is liable for its use by one of the above *persons*.

THERE IS NO COVERAGE FOR *NON-OWNED CARS*:

1. IF THE DECLARATIONS STATE THE "USE" OF *YOUR CAR* IS OTHER THAN "PLEASURE AND BUSINESS"; OR

2. WHILE:

7
8046

a. BEING REPAIRED, SERVICED OR USED BY ANY *PERSON* WHILE THAT *PERSON* IS WORKING IN ANY *CAR BUSINESS*; OR

b. USED IN ANY OTHER BUSINESS OR OCCUPATION. This does not apply to a *private passenger car* driven or *occupied* by the first *person* named in the declarations, his or her *spouse* or their *relatives*.

## Trailer Coverage

1. Trailers designed to be pulled by a *private passenger car* or a *utility vehicle*, except those trailers in 2.a. below, are covered while owned or used by an *insured*.

   Farm implements and farm wagons are considered trailers while pulled on public roads by a *car* we insure for liability.

   These trailers are not described in the declarations and no extra premium is charged.

2. The following trailers are covered only if described on the declarations page and extra premium is paid:

   a. those trailers designed to be pulled by a *private passenger car* or a *utility vehicle*:

      (1) if designed to carry *persons*; or

      (2) while used with a motor vehicle whose use is shown as "commercial" on the declarations page (trailers used only for pleasure use are covered even if not described and no extra premium paid); or

      (3) while used as premises for office, store or display purposes; or

   b. any trailer not designed for use with a *private passenger car* or a *utility vehicle*.

   THERE IS NO COVERAGE WHEN A TRAILER IS USED WITH A MOTOR VEHICLE OWNED OR HIRED BY *YOU* WHICH WE DO NOT INSURE FOR LIABILITY COVERAGE.

## Limits of Liability

The amount of bodily injury liability coverage is shown on the declarations page under "Limits of Liability—Coverage A—Bodily Injury, Each Person, Each Accident". Under "Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person*. "*Bodily injury* to one *person*" includes all injury and damages to others resulting from this *bodily injury*. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to *bodily injury* to two or more *persons* in the same accident.

The amount of property damage liability coverage is shown on the declarations page under "Limits of Liability — Coverage A — Property Damage, Each Accident".

We will pay damages for which an *insured* is legally liable up to these amounts.

The limits of liability are not increased because more than one *person* or organization may be an *insured*.

A motor vehicle and attached trailer are one vehicle. Therefore, the limits are not increased.

Medical expenses paid or payable under the medical payments coverage will not be paid for again as damages under this coverage. This does not reduce the limits of liability of this coverage.

## When Coverage A Does Not Apply

In addition to the limitations of coverage in **Who Is an Insured and Trailer Coverage**:

THERE IS NO COVERAGE:

1. WHILE ANY VEHICLE INSURED UNDER THIS SECTION IS:

   a. RENTED OR LEASED TO OTHERS.

   b. USED TO CARRY *PERSONS* FOR A CHARGE. This does not apply to the use on a share expense basis of:

      (1) a *private passenger car*; or

      (2) a *utility vehicle*, if all passengers are riding in that area of the vehicle designed by the manufacturer of the vehicle for carrying passengers.

   c. BEING REPAIRED, SERVICED OR USED BY ANY *PERSON* EMPLOYED OR ENGAGED IN ANY WAY IN A *CAR BUSINESS*. This does not apply to:

      (1) *you* or *your spouse*;

      (2) any *relative*;

      (3) any resident of *your* household; or

8
8046

(4) any agent, employee or partner of *you, your spouse,* any *relative* or such resident.

This coverage is excess for (3) and (4) above.

2. FOR ANY *BODILY INJURY* TO:

a. A FELLOW EMPLOYEE WHILE ON THE JOB AND ARISING FROM THE MAINTENANCE OR USE OF A VEHICLE BY ANOTHER EMPLOYEE IN THE EMPLOYER'S BUSINESS. *You* and *your spouse* are covered for such injury to a fellow employee.

b. ANY EMPLOYEE OF AN *INSURED* ARISING OUT OF HIS OR HER EMPLOYMENT. This does not apply to a household employee who is not covered or required to be covered under any workers' compensation insurance.

c. ANY *INSURED* OR ANY MEMBER OF AN *INSURED'S* FAMILY RESIDING IN THE *INSURED'S* HOUSEHOLD.

3. FOR:

a. THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES; OR

b. ANY *PERSON* WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

4. FOR ANY DAMAGES TO PROPERTY OWNED BY, RENTED TO, IN THE CHARGE OF OR TRANSPORTED BY AN *INSURED*. But coverage applies to a rented:

a. residence; or

b. private garage

damaged by a *car* we insure.

5. FOR ANY OBLIGATION OF AN *INSURED*, OR HIS OR HER INSURER, UNDER ANY TYPE OF WORKERS' COMPENSATION OR DISABILITY OR SIMILAR LAW.

6. FOR LIABILITY ASSUMED BY THE *INSURED* UNDER ANY CONTRACT OR AGREEMENT.

**If There Is Other Liability Coverage**

1. **Policies Issued by Us to You, Your Spouse, or Any Relative**

If two or more vehicle liability policies issued by us to *you, your spouse,* or any *relative* apply to the same accident, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability.

2. **Other Liability Coverage Available From Other Sources**

Subject to item 1, if other vehicle liability coverage applies, we are liable only for our share of the damages. Our share is the per cent that the limit of liability of this policy bears to the total of all vehicle liability coverage applicable to the accident.

3. **Temporary Substitute Car, Non-Owned Car, Trailer**

If a *temporary substitute car,* a *non-owned car* or a trailer designed for use with a *private passenger car* or *utility vehicle:*

a. has other vehicle liability coverage on it; or

b. is self-insured under any motor vehicle financial responsibility law, a motor carrier law or any similar law,

then this coverage is excess over such insurance or self-insurance.

However, subject to items 1 and 2 above, this policy shall provide primary coverage on a *car*:

a. operated by the *insured*; and

b. loaned to the *insured* by a legally licensed automobile dealer;

(1) as a replacement for *your car* while it is out of use due to its breakdown, repair, or servicing; or

(2) for use as a demonstrator vehicle.

4. **Newly Acquired Car**

THIS COVERAGE DOES NOT APPLY IF THERE IS OTHER VEHICLE LIABILITY COVERAGE ON A *NEWLY ACQUIRED CAR.*

## Motor Vehicle Compulsory Insurance Law or Financial Responsibility Law

### 1. Out-of-State Coverage

If an *insured* under the liability coverage is in another state or Canada and, as a nonresident, becomes subject to its motor vehicle compulsory insurance, financial responsibility or similar law:

a. the policy will be interpreted to give the coverage required by the law; and

b. the coverage so given replaces any coverage in this policy to the extent required by the law

for the *insured's* operation, maintenance or use of a *car* insured under this policy.

Any coverage so extended shall be reduced to the extent other coverage applies to the accident. In no event shall a *person* collect more than once.

### 2. Financial Responsibility Law

When certified under any law as proof of future financial responsibility, and while required during the policy period, this policy shall comply with such law to the extent required. The *insured* agrees to repay us for any payment we would not have had to make under the terms of this policy except for this agreement.

10-
8046

# SECTION II — MEDICAL PAYMENTS — COVERAGE C

*You* have this coverage if "C" appears in the "Coverages" space on the declarations page.

## MEDICAL EXPENSES

We will pay reasonable medical expenses incurred, for *bodily injury* caused by accident, for services furnished within two years of the date of the accident. These expenses are for necessary medical, surgical, X-ray, dental, ambulance, hospital, professional nursing, funeral expenses, and prosthetic services, eyeglasses, hearing aids and remedial religious treatment by a recognized method of healing.

These incurred expenses must be:

1. for:
   a. services performed, or
   b. medical supplies, medication or drugs prescribed

   by a medical provider licensed by the state to provide the specific medical services; and

2. for funeral services and remedial religious treatment by a recognized method of healing.

We have the right to make or obtain a utilization review of the medical expenses and services to determine if they are reasonable and necessary for the *bodily injury* sustained.

## Persons for Whom Medical Expenses Are Payable

We will pay medical expenses for *bodily injury* sustained in a motor vehicle accident by:

1. a. *you*;
   b. *your spouse*; and
   c. any *relative*.

2. any other *person* while:
   a. *occupying your car*, a *newly acquired car* or a *temporary substitute car*. The vehicle has to be used by an *insured* under the liability coverage.
   b. *occupying* a *non-owned car*. The *bodily injury* has to result from the operation or occupancy of the *non-owned car* by *you*, *your spouse* or any *relative*.
   c. not an occupant of a self-propelled vehicle, other than a motorcycle, if *your car*,

a *newly acquired car* or a *temporary substitute car*:

   (1) strikes such *person*; and
   (2) is used by an *insured* under the liability coverage.

## Payment of Medical Expenses

We may pay the injured *person* or any *person* or organization performing the services.

## Limit of Liability

Medical Expenses. The amount of coverage for medical expenses is shown on the declarations page under "Limit of Liability – Coverage C – Each Person". If the amount shown is $5,000 or more, the most we pay for funeral expenses is the lesser of:

1. $5,000; or
2. the amount remaining from the limit of liability after payment of his or her medical expenses.

A motor vehicle and attached trailer are one vehicle as respects limits.

## If There Are Other Medical Payments Coverages

If other vehicle medical payments coverage issued by us or any other insurer applies to *you*, *your spouse* or any *relative*:

1. the total limit of liability shall not exceed the highest limit of liability of any one coverage; and
2. we are liable only for our share of the expenses. Our share is that per cent that the limit of liability of this coverage bears to the sum of all vehicle medical payments coverages that apply.

## What Is Not Covered

THERE IS NO COVERAGE:

1. WHILE A *NON-OWNED CAR* IS USED:
   a. BY ANY *PERSON* EMPLOYED OR ENGAGED IN ANY WAY IN A *CAR BUSINESS*; OR

11
8046

b. IN ANY OTHER BUSINESS OR JOB. This does not apply when the first *person* named in the declarations, his or her *spouse* or any *relative* is operating or *occupying* a *private passenger car*.

2. WHILE *OCCUPYING* OR THROUGH BEING STRUCK BY ANY MOTOR VEHICLE OR TRAILER:

   a. DESIGNED MAINLY FOR USE OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

   b. LOCATED FOR USE AS A RESIDENCE OR PREMISES; OR

   c. THAT RUNS ON RAILS OR CRAWLER-TREADS.

3. FOR *BODILY INJURY* DUE TO WAR OF ANY KIND.

4. FOR MEDICAL EXPENSES FOR *BODILY INJURY*:

   a. SUSTAINED WHILE *OCCUPYING* OR THROUGH BEING STRUCK BY A VEHICLE OWNED BY OR LEASED TO *YOU, YOUR SPOUSE*, OR ANY *RELATIVE*, WHICH IS NOT INSURED UNDER THE LIABILITY COVERAGE OF THIS POLICY; OR

   b. TO THE EXTENT WORKERS' COMPENSATION BENEFITS ARE REQUIRED TO BE PAYABLE; OR

   c. SUSTAINED BY ANY *PERSON*, other than *you, your spouse* or any *relative*, WHILE *OCCUPYING* A VEHICLE:

(1) RENTED OR LEASED TO OTHERS; OR

(2) USED TO CARRY *PERSONS* FOR A CHARGE. This does not apply to a *private passenger car* used on a share expense basis.

5. FOR ANY *PERSON*:

   a. WHO IS:

   (1) A NAMED INSURED; OR

   (2) RELATED BY BLOOD, MARRIAGE OR ADOPTION TO AND A RESIDENT IN THE HOUSEHOLD OF A NAMED INSURED;

   UNDER ANOTHER POLICY THAT PROVIDES VEHICLE MEDICAL PAYMENTS COVERAGE. This does not apply to *you, your spouse* or any *relative*.

   b. WHOSE CONDUCT CONTRIBUTED TO HIS OR HER *BODILY INJURY* IN ANY OF THE FOLLOWING WAYS:

   (1) CAUSING *BODILY INJURY* TO HIMSELF OR HERSELF INTENTIONALLY;

   (2) WHILE COMMITTING A FELONY; OR

   (3) WHILE TRYING TO AVOID LAWFUL SEIZURE OR ARREST BY AN OFFICER OF THE LAW.

# SECTION III — UNINSURED MOTOR VEHICLE — COVERAGE U, UNDERINSURED MOTOR VEHICLE — COVERAGE W, AND UNINSURED MOTOR VEHICLE — PROPERTY DAMAGE — COVERAGE U1

## UNINSURED MOTOR VEHICLE — COVERAGE U

*You* have this coverage if "U" appears in the "Coverages" space on the declarations page.

We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be sustained by an *insured* and caused by accident arising out of the operation, maintenance or use of an *uninsured motor vehicle*.

*Uninsured Motor Vehicle* — under coverage U means:

1. a land motor vehicle, the ownership, maintenance or use of which is:

   a. not insured or bonded for bodily injury liability at the time of the accident; or

   b. insured or bonded for bodily injury liability at the time of the accident; but

      (1) the limits of liability are less than required by the financial responsibility act of the state where *your car* is mainly garaged; or

      (2) the insuring company denies coverage or is or becomes insolvent; or

2. a "hit-and-run" land motor vehicle whose owner or driver remains unknown and which strikes:

   a. the *insured;* or

   b. the vehicle the *insured* is *occupying*

   and is the proximate cause of *bodily injury* to the *insured.*

An *uninsured motor vehicle* does not include a land motor vehicle:

1. insured under the liability coverage of this policy;

2. furnished for the regular use of *you, your spouse* or any *relative;*

3. owned or operated by a self-insurer under any motor vehicle financial responsibility law, a motor carrier law or any similar law;

4. owned by any government or any of its political subdivisions or agencies;

5. designed for use mainly off public roads except while on public roads; or

6. while located for use as premises.

## UNDERINSURED MOTOR VEHICLE — COVERAGE W

*You* have this coverage if "W" appears in the "Coverages" space on the declarations page.

We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *underinsured motor vehicle*. The *bodily injury* must be sustained by an *insured* and caused by accident arising out of the operation, maintenance or use of an *underinsured motor vehicle*.

*Underinsured Motor Vehicle* — means a land motor vehicle:

1. the ownership, maintenance or use of which is insured or bonded for bodily injury liability at the time of the accident; but

2. the limits of liability for bodily injury liability are less than the amount needed to compensate the *insured* for damages.

An *underinsured motor vehicle* does not include a land motor vehicle:

1. insured under the liability coverage of this policy;

2. furnished for the regular use of *you, your spouse* or any *relative*;

3. owned by any government or any of its political subdivisions or agencies;

4. designed for use mainly off public roads except while on public roads;

5. while located for use as premises; or

6. defined as an *uninsured motor vehicle* in *your* policy.

## Who Is an Insured

*Insured* — means the *person* or *persons* covered by uninsured motor vehicle coverage or underinsured motor vehicle coverage.

13
8046

This is:

1. the first *person* named in the declarations;

2. his or her *spouse*;

3. their *relatives*; and

4. any other *person* while *occupying*:

   a. *your car*, a *temporary substitute car*, a *newly acquired car* or a trailer attached to such *car*.

      Such vehicle has to be used within the scope of the consent of *you* or *your spouse*; or

   b. a *car* not owned by or leased to *you, your spouse* or any *relative*, or a trailer attached to such a *car*. It has to be driven by the first *person* named in the declarations or that *person's spouse* and within the scope of the owner's consent.

      Such other *person occupying* a vehicle used to carry *persons* for a charge is not an *insured*.

5. any *person* entitled to recover damages because of *bodily injury* to an *insured* under 1 through 4 above.

## UNINSURED MOTOR VEHICLE — PROPERTY DAMAGE — COVERAGE U1

*You* have this coverage if "U1" appears in the "Coverages" space on the declarations page.

We will pay damages for *property damage you* are legally entitled to collect from the owner or driver of an *uninsured motor vehicle*. The *property damage* must be caused by accident arising out of the operation, maintenance or use of an *uninsured motor vehicle*.

*Property Damage* — means damage to *your car* or a *newly acquired car*.

*Uninsured Motor Vehicle* — under coverage U1 means:

1. a land motor vehicle, the ownership, maintenance or use of which is:

   a. not insured or bonded for property damage liability at the time of the accident; or

   b. insured or bonded for property damage liability at the time of the accident; but

(1) the limit of liability is less than required by the financial responsibility act of the state where *your car* is mainly garaged; or

(2) the insuring company denies coverage or is or becomes insolvent; or

2. a "hit-and-run" land motor vehicle whose owner or driver remains unknown and which strikes *your car* or a *newly acquired car* and is the proximate cause of *property damage*.

Under Coverage U1, *uninsured motor vehicle* does not include a land motor vehicle:

1. insured under the liability coverage of this policy;

2. owned by or furnished for the regular use of *you, your spouse* or any *relative*;

3. owned or operated by a self-insurer under any motor vehicle financial responsibility law, a motor carrier law or any similar law;

4. owned by any government or any of its political subdivisions or agencies;

5. designed for use mainly off public roads except while on public roads; or

6. while located for use as premises.

## Consent to Be Bound

We are not bound by any judgment against any *person* or organization obtained without our written consent.

## Tentative Agreement to Settle — Coverage W

If the *insured* reaches a tentative agreement to settle with the owner or operator of an *underinsured motor vehicle* for the liability limits available to such owner or operator, the *insured* may send written notice of such agreement to us. The notice must be sent by certified mail - return receipt requested, and include:

1. written documentation of the dollar amount of the loss incurred;

2. copies of all medical bills;

3. written authorization or a court order allowing us to obtain medical reports from all employers and medical providers; and

4. written confirmation from the liable party's liability insurer of the liability limits and the

terms of the tentative settlement. THE TENTATIVE SETTLEMENT CANNOT INCLUDE ANY AMOUNT REPRESENTING PUNITIVE OR EXEMPLARY DAMAGES.

If we pay the *insured* the amount of the tentative settlement within 30 days of its receipt, we are subrogated to the extent of any payments made under underinsured motor vehicle coverage.

If we fail to pay the the *insured* the amount of the tentative settlement agreement within 30 days of its receipt:

1. we waive our subrogation rights; and

2. the *insured* may settle with the owner or operator of an *underinsured motor vehicle* without losing the right to make an underinsured motor vehicle coverage claim against us.

This provision (Tentative Agreement to Settle – Coverage W) is waived if we provide both:

1. liability coverage for the owner or operator of the *underinsured motor vehicle;* and

2. underinsured motor vehicle coverage for the *insured.*

Except as provided above, the *insured* shall not settle with any *person* or organization who may be liable for the *bodily injury* without our written consent if the settlement impairs our right to recover our payments.

## Payment of Any Amount Due

Under coverages U and W, we will pay any amount due:

1. to the *insured*;

2. to a parent or guardian if the *insured* is a minor or an incompetent *person*;

3. to the surviving *spouse*; or

4. at our option, to a *person* authorized by law to receive such payment.

Under coverage U1, we will pay any amount due:

1. to *you*; or

2. at our option, to a *person* authorized by law to receive such payment.

## Limits of Liability

### Coverage U

1. The amount of coverage is shown on the declarations page under "Limits of Liability – U – Each Person, Each Accident". Under "Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person.* "*Bodily injury* to one *person*" includes all injury and damages to others resulting from this *bodily injury.* Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to *bodily injury* to two or more *persons* in the same accident.

2. Any amount payable under this coverage shall be reduced by any amount paid or payable to or for the *insured* by or for any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured.*

3. Any amount payable under the liability coverage will not be paid for again as damages under this coverage. This does not reduce the limits of liability of this coverage.

4. Medical expenses paid or payable under the medical payments coverage will not be paid for again as damages under this coverage. This does not reduce the limits of liability of this coverage.

5. The limits of liability are not increased because:

   a. more than one vehicle is insured under this policy; or

   b. more than one *person* is insured at the time of the accident.

### Coverage W

1. The amount of coverage is shown on the declarations page under "Limits of Liability – W – Each Person, Each Accident". Under "Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person.* "*Bodily injury* to one *person*" includes all injury and damages to others resulting from this *bodily injury.* Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to *bodily injury* to two or more *persons* in the same accident.

2. Medical expenses paid or payable under the medical payments coverage will not be paid for again as damages under this coverage. This does not reduce the limits of liability of this coverage.

15
8046

3. The limits of liability are not increased because:

   a. more than one vehicle is insured under this policy;

   b. more than one *person* is insured at the time of the accident; or

   c. more than one *underinsured motor vehicle* is involved in the same accident.

4. The most we pay is the lesser of:

   a. the difference between the amount of the *insured's* damages for *bodily injury* and the amount paid to the *insured* by or for any *person* or organization who is or may be held legally liable for the *bodily injury*; or

   b. the limit of liability of this coverage.

**Coverage U1**

1. The amount of coverage is shown on the declarations page under "Limit of Liability – U1 – Property Damage, Each Accident". This is the amount of coverage for all *property damage* as the result of one accident.

2. Any amount payable under this coverage for *property damage* shall be reduced by any amount paid or payable to or for *you*:

   a. by or for any *person* or organization who is or may be held legally liable for such *property damage*;

   b. under any policy providing property insurance or physical damage coverage, including the collision coverage under this policy.

3. The limit of liability is not increased because:

   a. more than one vehicle is insured under this policy;

   b. more than one *person* is insured at the time of the accident; or

   c. more than one *uninsured motor vehicle* is involved in the accident.

**When Coverages U and W Do Not Apply**

THERE IS NO COVERAGE:

1. FOR *BODILY INJURY* TO AN *INSURED*:

   a. WHILE *OCCUPYING* A MOTOR VEHICLE OWNED BY OR LEASED TO *YOU, YOUR SPOUSE* OR ANY *RELATIVE* IF IT IS NOT INSURED FOR

THIS COVERAGE UNDER THIS POLICY; OR

   b. THROUGH BEING STRUCK BY A MOTOR VEHICLE OWNED BY OR LEASED TO *YOU, YOUR SPOUSE* OR ANY *RELATIVE*.

2. TO THE EXTENT IT BENEFITS:

   a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY.

   b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION, OR DISABILITY BENEFITS OR SIMILAR LAW.

   c. ANY GOVERNMENTAL BODY OR AGENCY.

3. UNDER COVERAGE U, FOR ANY *INSURED* WHO, WITHOUT OUR WRITTEN CONSENT SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY*.

**When Coverage U1 Does Not Apply**

THERE IS NO COVERAGE:

1. IF SETTLEMENT IS MADE WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *PROPERTY DAMAGE* WITHOUT OUR WRITTEN CONSENT.

2. FOR THE FIRST $200 OF *PROPERTY DAMAGE* RESULTING FROM ONE ACCIDENT.

   This does not apply if

   a. *your car* or a *newly acquired car* is insured for collision coverage with us; and

   b. the operator of the *uninsured motor vehicle* involved in the accident has been positively identified and is solely at fault.

**If There Is Other Uninsured Motor Vehicle Coverage**

1. If uninsured motor vehicle coverage for *bodily injury* is available to an *insured* from more than one policy provided by us or any other insurer, the total limit of liability available from all policies provided by all insurers shall not exceed the limit of liability of the single policy providing the

16
8046

highest limit of liability. This is the most that will be paid regardless of the number of policies involved, *persons* covered, claims made, vehicles insured, premiums paid or vehicles involved in the accident.

2. Subject to item 1 above, any coverage applicable under this policy shall apply:

   a. on a primary basis if the *insured* sustains *bodily injury* while *occupying your car*, or while not *occupying* a motor vehicle or trailer.

   b. on an excess basis if the *insured* sustains *bodily injury* while *occupying* a vehicle not owned by or leased to *you, your spouse*, or any *relative*. However, this coverage applies as primary coverage if the *insured* sustains *bodily injury* while *occupying* a vehicle loaned to the first *person* named in the declarations, his or her *spouse* or their *relative* by a legally licensed automobile dealer:

      (1) as a replacement for *your car* while it is out of use due to its breakdown, repair or servicing; or

      (2) for use as a demonstrator vehicle.

3. Subject to items 1 and 2 above, if this policy and one or more other policies provide coverage for *bodily injury*:

   a. on a primary basis, we are liable only for our share. Our share is that percent of the damages payable on a primary basis that the limit of liability of this policy bears to the total of all applicable uninsured motor vehicle coverage provided on a primary basis.

      The total damages payable from all policies that apply on a primary basis shall not exceed the limit of liability of the single policy providing the highest limit of liability on a primary basis.

   b. on an excess basis, we are liable only for our share. Our share is that percent of the damages payable on an excess basis that the limit of liability of this policy bears to the total of all applicable uninsured motor vehicle coverage provided on an excess basis.

      The total damages payable from all policies that apply on an excess basis shall not exceed the amount by which the limit of liability of

the single policy providing the highest limit of liability on an excess basis exceeds the limit of liability of the single policy providing the highest limit of liability on a primary basis.

## If There Is Other Underinsured Motor Vehicle Coverage

1. If underinsured motor vehicle coverage for *bodily injury* is available to an *insured* from more than one policy provided by us or any other insurer, the total limit of liability available from all policies provided by all insurers shall not exceed the limit of liability of the single policy providing the highest limit of liability. This is the most that will be paid regardless of the number of policies involved, *persons* covered, claims made, vehicles insured, premiums paid or vehicles involved in the accident.

2. Subject to item 1 above, any coverage applicable under this policy shall apply:

   a. on a primary basis if the *insured* sustains *bodily injury* while *occupying your car*, or while not *occupying* a motor vehicle or trailer.

   b. on an excess basis if the *insured* sustains *bodily injury* while *occupying* a vehicle not owned by or leased to *you, your spouse*, or any *relative*. However, this coverage applies as primary coverage if the *insured* sustains *bodily injury* while *occupying* a vehicle loaned to the first *person* named in the declarations, his or her *spouse* or their *relative* by a legally licensed automobile dealer:

      (1) as a replacement for *your car* while it is out of use due to its breakdown, repair or servicing; or

      (2) for use as a demonstrator vehicle.

3. Subject to items 1 and 2 above, if this policy and one or more other policies provide coverage for *bodily injury*:

   a. on a primary basis, we are liable only for our share. Our share is that percent of the damages payable on a primary basis that the limit of liability of this policy bears to the total of all applicable underinsured motor vehicle coverage provided on a primary basis.

17
8046

The total damages payable from all policies that apply on a primary basis shall not exceed the limit of liability of the single policy providing the highest limit of liability on a primary basis.

b.  on an excess basis, we are liable only for our share. Our share is that percent of the damages payable on an excess basis that the limit of liability of this policy bears to the total of all applicable underinsured motor vehicle coverage provided on an excess basis.

The total damages payable from all policies that apply on an excess basis shall not exceed the amount by which the limit of liability of the single policy providing the highest limit of liability on an excess basis exceeds the limit of liability of the single policy providing the highest limit of liability on a primary basis.

**If There Is Other Uninsured Motor Vehicle Property Damage Coverage**

If other similar coverage applies to *property damage*, we will pay our share. Our share is that percent of the damages that the limit of liability of this coverage bears to the total of all such similar coverage that applies to the accident.

# SECTION IV — PHYSICAL DAMAGE COVERAGES

*Loss* – means, when used in this section, each direct and accidental loss of or damage to:

1. *your car*;

2. its equipment which is common to the use of *your car* as a vehicle; or

3. clothes and luggage insured; and

4. a detachable living quarters attached or removed from *your car* for storage. Detachable living quarters includes its body and items securely fixed in place as a permanent part of the body. *You* must have told us about the living quarters before the *loss* and paid any extra premium needed.

**COMPREHENSIVE — COVERAGE D.** *You* have this coverage if "D" appears in the "Coverages" space on the declarations page. If a deductible applies the amount is shown by the number beside "D".

1. Loss to Your Car. We will pay for *loss* to *your car* EXCEPT *LOSS BY COLLISION* but only for the amount of each such *loss* in excess of the deductible amount, if any. If we offer to pay for the repair of damaged windshield glass instead of the replacement of the windshield and *you* agree to have such repair made, we will pay the full cost of repairing the windshield glass regardless of *your* deductible.

   Breakage of glass, or *loss* caused by missiles, falling objects, fire, theft, larceny, explosion, earthquake, windstorm, hail, water, flood, malicious mischief or vandalism, riot or civil commotion, is payable under this coverage. *Loss* due to hitting or being hit by a bird or an animal is payable under this coverage.

2. We will repay *you* for transportation costs if *your car* is stolen. We will pay up to $16 per day for the period that begins 48 hours after *you* tell us of the theft. The period ends when we offer to pay for *loss*.

**COLLISION – COVERAGE G.** *You* have this coverage if "G" appears in the "Coverages" space on the declarations page. The deductible amount is shown by the number beside "G".

We will pay for *loss* to *your car* caused by *collision* but only for the amount of each such *loss* in excess

of the deductible amount. If we offer to pay for the repair of damaged windshield glass instead of the replacement of the windshield and you agree to have such repair made, we will pay the full cost of repairing the windshield glass regardless of *your* deductible. If the *collision* is with another motor vehicle insured with us, you do not pay *your* deductible if it is $100 or less as we pay it.

*Collision* – means *your car* upset or hit or was hit by a vehicle or other object.

**Clothes and Luggage — Comprehensive and Collision Coverages**

We will pay for *loss* to clothes and luggage owned by the first *person* named in the declarations, his or her *spouse*, and their *relatives*. These items have to be in or on *your car*. *Your car* has to be covered under this policy for:

1. Comprehensive, and the *loss* caused by fire, lightning, flood, falling objects, explosion, earthquake or theft. If the *loss* is due to theft, *YOUR* ENTIRE *CAR* MUST HAVE BEEN STOLEN; or

2. Collision, and the *loss* caused by *collision*.

We will pay up to $200 for *loss* to clothes and luggage in excess of any deductible amount shown for comprehensive or collision. $200 is the most we will pay in any one occurrence even though more than one *person* has a *loss*. This coverage is excess over any other coverage.

**Limit of Liability — Comprehensive and Collision Coverages**

The limit of our liability for *loss* to property or any part of it is the lower of:

1. the actual cash value; or

2. the cost of repair or replacement.

Actual cash value is determined by the market value, age and condition at the time the *loss* occurred. Any deductible amount that applies is then subtracted.

The cost of repair or replacement is based upon one of the following:

1. the cost of repair or replacement agreed upon by *you* and us;

19
8046

2. a competitive bid approved by us; or

3. an estimate written based upon the prevailing competitive price. The prevailing competitive price means prices charged by a majority of the repair market in the area where the *car* is to be repaired as determined by a survey made by us. If *you* ask, we will identify some facilities that will perform the repairs at the prevailing competitive price. We will include in the estimate parts sufficient to restore the vehicle to its pre-loss condition. *You* agree with us that such parts may include either parts furnished by the vehicle's manufacturer or parts from other sources including non-original equipment manufacturers.

Any deductible amount that applies is then subtracted.

IN THE REPAIR OF YOUR COVERED MOTOR VEHICLE UNDER THE PHYSICAL DAMAGE COVERAGE PROVISIONS OF THIS POLICY, WE MAY REQUIRE OR SPECIFY THE USE OF MOTOR VEHICLE PARTS NOT MADE BY THE ORIGINAL MANUFACTURER. THESE PARTS ARE REQUIRED TO BE AT LEAST EQUAL IN TERMS OF FIT, QUALITY, PERFORMANCE, AND WARRANTY TO THE ORIGINAL MANUFACTURER PARTS THEY REPLACE.

**Settlement of Loss — Comprehensive and Collision Coverages**

We have the right to settle a *loss* with *you* or the owner of the property in one of the following ways:

1. pay up to the actual cash value of the property at the time of the *loss*. If the owner keeps the damaged property, we will deduct its value after the *loss* from our payment;

2. pay to:

   a. repair the damaged property or part, or

   b. replace the property or part.

   If the repair or replacement results in the vehicle being better than its pre-loss condition, we have the right to require *you* to pay for the amount of the betterment;

3. return the stolen property and pay for any damage due to the theft; or

4. pay the agreed upon value of the property at the time of the *loss* in exchange for the damaged property. The damaged property cannot be abandoned to us.

The Settlement of Loss provision for comprehensive and collision coverages incorporates the Limit of Liability provision of those coverages.

If we can pay the *loss* under either comprehensive or collision, we will pay under the coverage where *you* collect the most.

When there is *loss* to *your car*, clothes and luggage in the same occurrence, any deductible will be applied first to the *loss* to *your car*. *You* pay only one deductible.

**EMERGENCY ROAD SERVICE — COVERAGE H.** *You* have this coverage if "H" appears in the "Coverages" space on the declarations page.

We will pay the fair cost *you* incur for *your car* for:

1. mechanical labor up to one hour at the place of its breakdown;

2. towing to the nearest place where the necessary repairs can be made during regular business hours if it will not run;

3. towing it out if it is stuck on or immediately next to a public highway;

4. delivery of gas, oil, battery, or tire. WE DO NOT PAY FOR THE COST OF THE GAS, OIL, BATTERY OR TIRE.

**CAR RENTAL AND TRAVEL EXPENSES — COVERAGE R1.** *You* have this coverage if "R1" appears in the "Coverages" space on the declarations page.

1. **Car Rental Expense.** We will:

   a. pay *you* up to $16 of the daily rental charge when *you* rent a *car* from a car rental agency or garage; or

   b. pay *you* $10 for each complete 24 hour period that *your car* is not drivable if *you* choose to not rent a *car*. *You* must report to us the period of time that *your car* was not drivable.

   We will pay only if *your car* is not drivable because of a *loss* which would be payable under coverage D or G.

   This applies during a period starting:

20
8046

a. when *your car* cannot run due to the *loss*; or

b. if *your car* can run, when *you* leave it at the shop for agreed repairs;

and ending:

a. when it has been repaired or replaced, or

b. (1) when we offer to pay for the *loss*, if *your car* is repairable, or

   (2) five days after we offer to pay for the *loss*, if:

      (a) *your car* was stolen and not recovered, or

      (b) we declare it a total loss,

whichever comes first.

Any car rent payable under this coverage is REDUCED TO THE EXTENT IT IS PAYABLE UNDER COMPREHENSIVE.

2. **Travel Expenses.** If *your car* cannot run due to a *loss* which would be payable under coverage D or G more than 50 miles from home, we will repay *you* for expenses incurred by *you, your spouse* and any *relative* for:

a. Commercial transportation fares to continue to *your* destination or home.

b. Extra meals and lodging needed when the *loss* to *your car* causes a delay enroute. The expenses must be incurred between the time of the *loss* and *your* arrival at *your* destination or home or by the end of the fifth day, whichever occurs first.

c. Meals, lodging and commercial transportation fares incurred by *you* or a *person you* choose to drive *your car* from the place of repair to *your* destination or home.

3. **Rental Car. – Repayment of Deductible Amount Expense.** We will repay the expense of any deductible amount *you* are required to pay the owner under comprehensive or collision coverage in effect on a substitute *car* rented from a car rental agency or garage.

**Total Amount of Expenses Payable — Coverage R1**

1. The most we will pay for the total of the "Car Rental Expense" and "Rental Car – Repayment of Deductible Amount Expense" incurred in any one occurrence is $400.

2. The most we will pay for "Travel Expenses" incurred by all *persons* in any one occurrence is $400.

**CAR RENTAL AND TRAVEL EXPENSES — COVERAGE R2.** *You* have this coverage if "R2" appears in the "Coverages" space on the declarations page.

1. **Car Rental Expense.**

a. We will:

   (1) pay 80% of the rental charge when *you* rent a *car* from a car rental agency or garage. "Rental charge" means the daily rental rate plus charges for mileage and related taxes; or

   (2) pay *you* $10 for each complete 24 hour period that *your car* is not drivable if *you* choose to not rent a *car*. *You* must report to us the period of time that *your car* was not drivable.

   We will pay only if *your car* is not drivable because of a *loss* which would be payable under coverage D or G.

b. Payment will be made for a period that:

   (1) starts:

      (a) when *your car* is not drivable due to the *loss*; or

      (b) if *your car* is drivable, when *you* leave it at the shop for agreed repairs; and

   (2) ends:

      (a) when *your car* has been repaired or replaced; or

      (b) when we offer to pay for the *loss*, if *your car* is repairable but *you* choose to delay repairs; or

      (c) five days after we offer to pay for the *loss* if:

21
8046

(i) *your car* was stolen and not re-
covered; or

(ii) we declare that *your car* is a total
loss;

whichever comes first.

Any car rent payable under this coverage is
REDUCED TO THE EXTENT IT IS PAY-
ABLE UNDER COMPREHENSIVE.

2. Travel Expenses. If *your car* is not drivable due
to a *loss* which occurs more than 50 miles from
home and which would be payable under cover-
age D or G, we will pay *you* for expenses incurred
by *you, your spouse* and any *relative* for:

a. commercial transportation fares to continue
to *your* destination or home;

b. extra meals and lodging needed when the *loss*
to *your car* causes a delay enroute. The ex-
penses must be incurred between the time of
the *loss* and *your* arrival at *your* destination
or home or by the end of the fifth day, which-
ever occurs first; and

c. meals, lodging and commercial transportation
fares incurred by *you* or a *person you* choose to
drive *your car* from the place of repair to *your*
destination or home.

3. Rental Car — Repayment of Deductible
Amount Expense. We will pay the expense of
any deductible amount *you* are required to pay
the owner under comprehensive or collision cov-
erage in effect on a substitute *car* rented from a
car rental agency or garage.

**Total Amount of Expenses Payable — Coverage
R2**

1. The most we will pay for "Car Rental Expense"
incurred in any one occurrence is $500.

2. The most we will pay for "Travel Expenses"
incurred by all *persons* in any one occurrence is
$400.

3. The most we will pay for "Rental Car – Repay-
ment of Deductible Amount Expense" incurred
in any one occurrence is $400.

**Trailer Coverage**

**1. Owned Trailer**

*Your* trailer is covered:

a. when it is described on the declarations page
of the policy; and

b. for the coverages shown as applying to it.

**2. Non-Owned Trailer or Detachable Living
Quarters**

Any physical damage coverage in force on *your
car* applies to a non-owned:

a. trailer, if it is designed for use with a *private
passenger car*, or

b. detachable living quarters unit

used by the first *person* named in the declara-
tions, his or her *spouse* or their *relatives*.

The most we will pay under the comprehensive
or collision coverage for a *loss* to such non-
owned trailer or unit is $500.

A non-owned trailer or detachable living quarters
unit is one that:

a. is not owned by or registered in the name of:

(1) *you, your spouse*, any *relative*;

(2) any other *person* residing in the same
household as *you, your spouse* or any
*relative*; or

(3) an employer of *you, your spouse* or any
*relative*; and

b. has not been used or rented by or in the
possession of *you, your spouse* or any *rela-
tive* during any part of each of the last 21 or
more consecutive days. If *you* are insured by
one or more other car policies issued by us,
the 21 day limit is increased by an additional
21 days for each such additional policy; and

c. is not rented and used in connection with the
employment or business of *you, your spouse*
or any *relative*.

**Coverage for the Use of Other Cars**

The coverages in this section *you* have on *your car*
extend to a *loss* to a *newly acquired car*, a *temporary
substitute car* or a *non-owned car*. These coverages
extend to a *non-owned car* while it is driven by or in
the custody of an *insured*.

*Insured* — as used in this provision means:

1. the first *person* named in the declarations;

2. his or her *spouse*; or

3. their *relatives*.

**When the Physical Damage Coverages Do Not Apply**

THERE IS NO COVERAGE FOR:

1. A *NON-OWNED CAR*:

   a. IF THE DECLARATIONS STATE THE "USE" OF *YOUR CAR* IS OTHER THAN PLEASURE AND BUSINESS;

   b. WHILE BEING REPAIRED, SERVICED OR USED BY ANY *PERSON* WHILE THAT *PERSON* IS WORKING IN ANY *CAR BUSINESS*; OR

   c. WHILE USED IN ANY OTHER BUSINESS OR OCCUPATION. This does not apply to a *private passenger car* driven or *occupied* by the first *person* named in the declarations, his or her *spouse* or their *relatives*.

2. ANY VEHICLE WHILE:

   a. RENTED OR LEASED TO OTHERS;

   b. USED TO CARRY *PERSONS* FOR A CHARGE. This does not apply to the use on a share expense basis; or

   c. SUBJECT TO ANY LIEN, LEASE OR SALES AGREEMENT NOT SHOWN IN THE DECLARATIONS.

3. *LOSS* TO ANY VEHICLE DUE TO:

   a. TAKING BY ANY GOVERNMENTAL AUTHORITY;

   b. WAR OF ANY KIND;

   c. AND LIMITED TO WEAR AND TEAR, FREEZING, MECHANICAL OR ELECTRICAL BREAKDOWN OR FAILURE. This does not apply when the *loss* is the result of a theft covered by this policy. Nor does it apply to emergency road service; OR

   d. CONVERSION, EMBEZZLEMENT OR SECRETION BY ANY *PERSON* WHO HAS THE VEHICLE DUE TO ANY LIEN, RENTAL, LEASE OR SALES AGREEMENT.

4. TIRES unless:

   a. stolen, or damaged by fire or vandalism; or

   b. other *loss* covered by this section happens at the same time.

5. TAPES OR DISCS FOR RECORDING OR REPRODUCING SOUND.

6. ANY LASER OR RADAR DETECTOR.

**If There Is Other Coverage**

1. **Policies Issued by Us to You**

   If two or more vehicle policies issued by us to *you* apply to the same *loss* or occurrence, we will pay under the policy with the highest limit.

2. **Coverage Available From Other Sources**

   Subject to item 1, if other coverage applies to the *loss* or expenses, we will pay only our share. Our share is the per cent that the limit of liability of this policy bears to the total of all coverage that applies.

3. **Temporary Substitute Car, Non-Owned Car or Trailer**

   If a *temporary substitute car*, a *non-owned car* or trailer designed for use with a *private passenger car* has other coverage on it, then this coverage is excess. However, subject to items 1 and 2 above, this policy shall provide primary coverage on a *car*:

   a. operated by the *insured*; and

   b. loaned to the *insured* by a legally licensed automobile dealer:

      (1) as a replacement for *your car* while it is out of use due to its breakdown, repair or servicing, or

      (2) for use as a demonstrator vehicle.

4. **Newly Acquired Car**

   THIS INSURANCE DOES NOT APPLY IF THERE IS SIMILAR COVERAGE ON A *NEWLY ACQUIRED CAR*.

**No Benefit to Bailee**

These coverages shall not benefit any carrier or other bailee for hire liable for *loss*.

23
8046

## SECTION V — DEATH, DISMEMBERMENT AND LOSS OF SIGHT — COVERAGE S AND TOTAL DISABILITY — COVERAGE T

### DEATH, DISMEMBERMENT AND LOSS OF SIGHT – COVERAGE S

*You* have this coverage if "S" appears in the "Coverages" space on the declarations page. "S" with a number beside it is *your* coverage symbol.

Check *your* coverage symbol with the schedule for the limits *you* have chosen.

We will pay the amount shown in the schedule that applies for death, or *loss*, caused by a motor vehicle accident. The *insured* has to be *occupying* or be struck by a land motor vehicle or trailer. The death or *loss* must be the direct result of the accident and not due to any other cause. *Loss* must be sustained within 90 days of the accident. The death must occur within one year of the accident. If the death occurs within 24 hours after the accident, we will pay only the amount that applies to death.

*Insured* – means:

1. a. *you*;
   b. *your spouse*; or
   c. any *relative*; or

2. any other *person* while:
   a. *occupying*:
      (1) *your car*, a *newly acquired car* or a *temporary substitute car* with *your* permission; or
      (2) a vehicle loaned to *you* or *your spouse* by a legally licensed automobile dealer for use as a demonstrator vehicle. The vehicle must be operated by *you* or *your spouse*.
   b. not an occupant of a self-propelled vehicle, other than a motorcycle, if he or she is struck by *your car*, a *newly acquired car* or a *temporary substitute car*. The use must be by or within the scope of consent of *you* or *your spouse*.

*Loss* – means the loss of:

1. the foot or hand, cut off through or above the ankle or wrist; or
2. the whole thumb or finger; or

3. all sight.

### The Most We Pay

The most we will pay because of the death of, or *loss* to, each *insured*, except as provided below, is shown in the schedule for *your* coverage symbol.

The amount shown in the schedule for death or *loss* is doubled for an *insured* who, at the time of the accident, is using the vehicle's complete restraint system as recommended by the vehicle's manufacturer.

#### SCHEDULE

| Coverage Symbol | S1 | S2 |
|---|---|---|
| Death | $ 5,000 | $ 10,000 |
| *Loss* of: | | |
| hands; feet; sight of eyes; one hand & one foot; or one hand or one foot & sight of one eye | 5,000 | 10,000 |
| one hand or one foot; or sight of one eye | 2,500 | 5,000 |
| thumb & finger on one hand; or three fingers | 1,500 | 3,000 |
| any two fingers | 1,000 | 2,000 |

### Payment of Any Amount Due

We will pay any amount due:

1. to the *insured*;
2. to a parent or guardian if the *insured* is a minor or an incompetent *person*;
3. to the surviving husband or wife; or
4. at our option, to any *person* or organization authorized by law to receive such payment.

Any payment made is to its extent a complete discharge of our obligations. We are not responsible for the way the money is used.

### TOTAL DISABILITY — COVERAGE T

*You* have this coverage if "T" appears in the "Coverages" space on the declarations page. "T" with a number beside it is *your* coverage symbol. Check

*your* coverage symbol with the schedule for the limits *you* have chosen.

We will pay the *insured weekly indemnity* because of his or her continuous *total disability*. The *total disability* must result from *bodily injury*, caused by accident arising out of the use of a motor vehicle as a vehicle.

*Income Producer* – means a *person* who, at the time of the accident, was receiving salary, wages, tips, commissions, fees or other earnings from work or employment.

*Insured* – means:

  1.  a.  *you*;

      b.  *your spouse*; or

      c.  any *relative*; or

  2.  any other *person* while:

      a.  *occupying*:

          (1)  *your car*, a *newly acquired car* or a *temporary substitute car* with *your* permission, or

          (2)  a vehicle loaned to *you* or *your spouse* by a legally licensed automobile dealer for use as a demonstrator vehicle. The vehicle must be operated by *you* or *your spouse*.

      b.  not an occupant of a self-propelled vehicle, other than a motorcycle, if he or she is struck by *your car*, a *newly acquired car* or a *temporary substitute car*. The use must be by or within the scope of consent of *you* or *your spouse*.

*Total Disability* – means any disability that continuously keeps the *insured* from doing any and every duty that pertains to his or her occupation.

*Weekly Indemnity* – means, if the *insured* is:

  1.  an *income producer*, the lower of:

      a.  70% of the loss of salary, wages, tips, commissions, fees and other earnings from work or employment; or

      b.  the weekly amount shown in the schedule.

  2.  not an *income producer*, no more than $70 per week or pro-rata for a part of a week for

reasonable expenses incurred for needed services that would have been:

  a.  performed by the *insured* except for the injury;

  b.  for the benefit of the *insured's* family or the *insured*; and

  c.  done without pay.

*Weekly indemnity* must be incurred while the *insured* is alive.

*Weekly indemnity*, when payable, begins eight days after the date of the accident. It ends on the earliest of:

  1.  the *insured's* death;

  2.  when we have paid for the time period shown for *your* coverage symbol;

  3.  when an *income producer* is again able to engage in gainful activity; or

  4.  when an *insured* who is not an *income producer* is again able to perform the needed services.

**Limits of Liability**

The most we will pay an *insured* for *weekly indemnity* and the period of time we will pay it are shown in the schedule for *your* coverage symbol.

**SCHEDULE**

| Coverage Symbol | T1 | T2 | T3 |
|---|---|---|---|
| Weekly amount if *insured* is: | | | |
|   a.  an *income producer* | $140 | $250 | $500 |
|   b.  not an *income producer* | $70 | $70 | $70 |
| Period of Time – in weeks | 52 | 104 | 104 |

**Payment of Any Amount Due**

Payments will be made on a monthly basis within 30 days after we have proof of continued *total disability* and the amount due.

**If There Is Other Total Disability Coverage**

If other vehicle total disability coverage issued by us or any other insurer applies to *you*, *your spouse* or any *relative*:

1. the total limit shall not exceed the highest limit of liability of any one policy; and

2. we are liable only for our share of the amount payable. Our share is that per cent that the limit of liability of this policy bears to the sum of all vehicle total disability coverages that apply.

**When Coverage T Does Not Apply**

THIS COVERAGE DOES NOT APPLY TO:

1. AN *INSURED* WHILE ON THE JOB, OPERATING, *OCCUPYING*, LOADING OR UNLOADING:

   a. AN EMERGENCY VEHICLE; OR

   b. A VEHICLE USED IN THE *INSURED'S* BUSINESS OR JOB.

   But 1.b. does not apply if the vehicle is:

   (1) a *private passenger car* or school bus; or

   (2) of the pickup or van type, with a Gross Vehicle Weight of 10,000 pounds or less, while not used for delivery.

2. *BODILY INJURY* OR *LOSS* TO OR *TOTAL DISABILITY* OF AN *INSURED* DUE TO:

   a. DISEASE except pus forming infection due to *bodily injury* received in the accident; or

   b. SUICIDE OR ATTEMPTED SUICIDE WHILE SANE OR INSANE; OR

   c. WAR OF ANY KIND.

**When Coverages S and T Do Not Apply**

THESE COVERAGES DO NOT APPLY TO *BODILY INJURY* OR *LOSS* TO OR *TOTAL DISABILITY* OF AN *INSURED*:

1. WHO IS:

   a. A NAMED INSURED, OR

   b. RELATED BY BLOOD, MARRIAGE OR ADOPTION TO AND A RESIDENT IN THE HOUSEHOLD OF A NAMED INSURED,

   UNDER ANOTHER POLICY PROVIDING VEHICLE DEATH, DISMEMBERMENT AND LOSS OF SIGHT OR TOTAL DISABILITY COVERAGE: This does not apply to *you*, *your spouse* or any *relative*.

2. CAUSING INJURY TO HIMSELF OR HERSELF INTENTIONALLY;

3. WHILE COMMITTING A FELONY; OR

4. WHILE TRYING TO AVOID LAWFUL SEIZURE OR ARREST BY AN OFFICER OF THE LAW.

# CONDITIONS

## 1. Policy Changes

a. **Policy Terms.** The terms of this policy may be changed or waived only by:

(1) an endorsement signed by one of our executive officers; or

(2) the revision of this policy form to give broader coverage without an extra charge. If any coverage *you* carry is changed to give broader coverage, we will give *you* the broader coverage without the issuance of a new policy as of the date we make the change effective.

b. **Change of Interest.** No change of interest in this policy is effective unless we consent in writing. However, if *you* die, we will protect as named insured:

(1) *your* surviving *spouse*;

(2) any *person* with proper custody of *your car*, a *newly acquired car* or a *temporary substitute car* until a legal representative is qualified; and then

(3) the legal representative while acting within the scope of his or her duties.

Policy notice requirements are met by mailing the notice to the deceased named insured's last known address.

c. **Consent of Beneficiary.** Consent of the beneficiary under death, dismemberment and loss of sight coverage is not needed to cancel or change the policy.

d. **Joint and Individual Interests.** When there are two or more named insureds, each acts for all to cancel or change the policy.

## 2. Suit Against Us

There is no right of action against us:

a. until all the terms of this policy have been met; and

b. under the liability coverage, until the amount of damages an *insured* is legally liable to pay has been finally determined by:

(1) judgment after actual trial, and appeal if any; or

(2) agreement between the *insured*, the claimant and us.

Bankruptcy or insolvency of the *insured* or his or her estate shall not relieve us of our obligations.

c. under uninsured motor vehicle, underinsured motor vehicle, medical payments, any physical damage, death, dismemberment and loss of sight and total disability coverages, until 30 days after we get the *insured's* notice of accident or *loss*.

## 3. Our Right to Recover Our Payments

a. Death, dismemberment and loss of sight coverage payments are not recoverable by us.

b. Under medical payments, uninsured motor vehicle, uninsured motor vehicle property damage and total disability coverages:

(1) we are subrogated to the extent of our payments to the proceeds of any settlement the injured *person* recovers from any party liable for the *bodily injury* or *property damage*.

(2) if the *person* to or for whom we have made payment has not recovered from the party at fault, he or she shall:

(a) keep these rights in trust for us;

(b) execute any legal papers we need; and

(c) when we ask, take action through our representative to recover our payments.

The costs of collection will be shared in the proportion we and the *person* to or for whom we have made payment benefit from the recovery.

c. Under underinsured motor vehicle coverage:

(1) we are subrogated to the amount we pay; and

(2) we are entitled to an assignment, in the amount of our payment, of any judgment obtained by the injured *person* against the party liable for the *bodily injury*; and

(3) the injured *person* shall:

27
8046

(a) execute any legal papers we need; and

(b) help us get our money back.

unless we have waived our subrogation rights according to the provision titled "Tentative Agreement to Settle – Coverage W."

d. Under all other coverages the right of recovery of any party we pay passes to us. Such party shall:

(1) not hurt our rights to recover; and

(2) help us get our money back.

e. We have the right to recover our payments only if the *insured's* total recovery exceeds the total amount of his or her incurred damages.

### 4. Cancellation

**How You May Cancel.** *You* may cancel *your* policy by notifying us in writing of the date to cancel, which must be later than the date *you* mail or deliver it to us. We may waive these requirements by confirming the date and time of cancellation to *you* in writing.

**How and When We May Cancel.** We may cancel *your* policy by written notice, mailed or delivered to *your* last known address. The notice shall give the date cancellation is effective. It will be mailed or delivered to *you* at least:

a. 10 days before the cancellation effective date if the cancellation is because *you* did not pay the premium; or

b. 20 days before the cancellation effective date if the cancellation is because of any other reason.

The mailing of it shall be sufficient proof of notice.

Unless we mail or deliver a notice of cancellation to *you* within 59 days of the policy effective date, we will not cancel *your* policy before the end of the current policy period unless:

a. *you* fail to pay the premium when due; or

b. *you, your spouse,* any *relative* or any other *person* who usually drives *your car* has had his or her driver's license under suspension or revocation during the policy period, or if the policy is renewed, during the current policy period or the 180 days just before its effective date.

**Return of Unearned Premium.** If *you* cancel, premium may be earned on a short rate basis. If we cancel, premium will be earned on a pro-rata basis. Any unearned premium may be returned at the time we cancel or within a reasonable time thereafter. Delay in the return of unearned premium does not affect the cancellation.

### 5. Renewal

Unless we mail or deliver to *you* a notice of cancellation or a notice of our intention not to renew the policy, we agree to renew the policy for the next policy period upon *your* payment of the renewal premium when due. It is agreed that the renewal premium will be based upon the rates in effect, the coverages carried, the applicable limits of liability, deductibles and other elements that affect the premium that apply at the time of renewal.

Other elements that may affect *your* premium include, but are not limited to:

a. drivers of *your car* and their ages and marital status;

b. *your car* and its use;

c. eligibility for discounts or other premium credits;

d. applicability of a surcharge based either on accident history, or on other factors.

A notice of our intention to not renew will be mailed or delivered to *your* last known address at least 30 days before the end of the current policy period. The mailing of it shall be sufficient proof of notice.

### 6. Premium

The premium for this policy may vary based upon the purchase of other insurance from one of the State Farm affiliated companies.

The premium for this policy is based on information State Farm has received from *you* or other sources. If the information is incorrect or incomplete, or changes during the policy period, *you* must inform State Farm of any changes regarding the following:

a. *your car*, or its use, including annual mileage;

b. the *persons* who regularly drive *your car*, including newly licensed family members;

c. *your* marital status; or

d. the location where *your car* is principally garaged.

*You* agree that if this information or any other information used to determine the premium is incorrect or incomplete, or changes during the policy period, we may decrease or increase the premium during the policy period based upon the corrected, completed or changed information. *You* agree that if the premium is decreased or increased during the policy period, State Farm will refund or credit to *you* any decrease in premium and *you* will pay for any increase in premium.

**7. Concealment or Fraud**

There is no coverage under this policy if *you* or any other *person* insured under this policy has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

**8. Participating Policy**

*You* are entitled to participate in a distribution of the earnings of the company as determined by our Board of Directors in accordance with the company's Articles of Incorporation as amended.

In Witness Whereof, the State Farm Fire and Casualty Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

*Kim M. Brunner*

SECRETARY

*Edward B Rust Jr*

PRESIDENT

29
9046



**COOK LAW FIRM**

ATTORNEYS

8114 Cantrell Road, Suite 100
Little Rock, AR 72227
Telephone: (501) 255-1500
Facsimile: (501) 255-1116
www.halcook.com

HAROLD F. COOK*°
ATTORNEY

WHITNEY M. COSSIO*
ATTORNEY

LICENSED IN:
ARKANSAS*; MISSOURI*; TENNESSEE*;
UTAH*; TEXAS FED. DIST. COURT*°;
UNITED STATES SUPREME COURT*

LITIGATION SECTION
JAMIE L. MOSE

CASE MANAGEMENT
SARA E. DICKSON
BRITTANY L. HURT

INVESTIGATOR
SCOTT R. SPECKELS

February 7, 2017

**VIA U.S. MAIL**
Ms. Jeannie Pike
Garland County Circuit Clerk
501 Ouachita, Room 207
Hot Springs, AR 71901
Telephone: (501) 622-3630
Facsimile: (501) 609-9043

RE:   *Tyrone Davis, et al. v. State Farm Fire and Casualty Company*
      Garland County Circuit Court Case No. _CV-17-142 IV_

Dear Clerk:

Enclosed for filing please find the original plus two copies of Plaintiff's Original Complaint, Civil Coversheet, and Summons, along with a check in the amount of $165.00 for the filing fee. After everything has been filed, please return the file-marked copies back to my office in the enclosed envelope.

If you have any questions or concerns, please do not hesitate to contact me. I appreciate your assistance with this matter.

Best regards,

COOK LAW FIRM, P.A.

Whitney M. Cossio
Attorney at Law

Enclosure(s)

IN THE CIRCUIT COURT OF GARLAND COUNTY, ARKANSAS
CIVIL DIVISION

# SUMMONS

Case No. _CV-17-142 IV_

| | |
|---|---|
| PLAINTIFF(S): | **TYRONE DAVIS, INDIVIDUALLY AND AS PARENT AND NATURAL GUARDIAN OF JALISSA DAVIS; ELNORA DAVIS, INDIVIDUALLY AND AS PARENT AND NATURAL GUARDIAN OF ALZERIA DAVIS; and JUMILYAH MITCHELL** |
| DEFENDANT: | **STATE FARM FIRE AND CASUALTY COMPANY** |
| PLAINTIFF'S ATTORNEYS: | Harold F. Cook & Whitney M. Cossio, COOK LAW FIRM, P.A., 8114 Cantrell Road, Suite 100 Little Rock, AR 72227 |
| DEFENDANT'S ADDRESS: | State Farm Fire and Casualty Company via registered agent – Corporation Service Company 300 Spring Building, Suite 900 300 S. Spring Street Little Rock, AR 72201 |

THE STATE OF ARKANSAS TO DEFENDANT(S): **State Farm Fire and Casualty Company via registered agent – Corporation Service Company**

# NOTICE

1.  You are hereby notified that a lawsuit has been filed against you; the relief asked is stated in the attached complaint.
2.  The attached complaint will be considered admitted by you and a judgment by default may be entered against you for the relief asked in the complaint unless you file a pleading and thereafter appear and present your defense. Your pleading or answer must meet the following requirements:
    A.  It must be in writing, and otherwise comply with the Arkansas Rules of Civil Procedure.
    B.  It must be filed in the court clerk's office within thirty (30) days after service of this summons on you (not counting the day you received it) or sixty (60) days if

you are incarcerated in any jail, penitentiary, or other correction facility in Arkansas.

3.   If you desire to be represented by an attorney you should immediately contact your attorney so that an answer can be filed for you within the time allowed.

Additional notices:

WITNESS my hand and the seal of the court this date_____ 2/9/17

Address of Clerk's office:   Ms. Jeannie Pike
                             Garland County Circuit Court
                             501 Ouachita Avenue, Room 207
                             Hot Springs, AR 71901
                             Telephone: (501) 622-3630
                             Facsimile: (501) 609-9043

_Hot Springs_ Arkansas _71901_   By _____ D.C.

# RETURN

STATE OF ARKANSAS, COUNTY OF _____:

On this _____day of _____, 20___ at _____ o'clock _____.M.,
I have duly served the within summons by delivering a copy thereof (or stating the substance thereof), together with a copy of the complaint, to such person being:

CHECK APPLICABLE SQUARE:

☐ the person named therein as defendant.

☐ a member of the defendant's family above 14 years of age at defendant's usual place of abode, namely

_____

☐ the duly designated agent for service of process for the defendant, namely ____

_____

OTHER _____

_____, SHERIFF

By: _____
                Deputy Sheriff